

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Homer Garrison, Jr., Director
Department of Public Safety
Camp Mabry
Austin, Texas

Dear Sir:

Opinion No. O-3100
Re: Authority of the Depart-
ment of Public Safety to
purchase suitable land
on which to erect a radio
station, and pay for same
out of its appropriations.

Your request for an opinion on the following question:

Would the Department of Public Safety be authorized
to purchase suitable land from the appropriation
to the department to erect a radio station for
police broadcasting purposes?

has been received in your letter which we quote:

"In the Act creating the Department of Public
Safety, provision is made for the erection and
operation of police broadcasting stations. Such
a station has been in operation at Camp Mabry
for several years, but recently it was necessary
for us to move from our location upon request
of the Adjutant-General, due to the fact that
the ground that we were occupying is now being
used for new buildings under the supervision of
the Adjutant-General.

"For efficient transmission of messages by
radio, it is necessary that the serial and ground
system be erected on certain types of soil that
are not available at Camp Mabry. I would appreciate

it if you would advise me whether or not this Department would be authorized to purchase suitable land from the appropriation of the Department to erect a radio station."

The authority of the Department of Public Safety is found in Articles 4413 (1), 4413 (2), 4413 (4), 4413 (13), 4413 (15), Revised Civil Statutes of Texas, which read as follows:

"Art. 4413 (1). There is hereby created a Department of Public Safety of the State of Texas, hereinafter designated as 'the Department,' in which is vested the enforcement of the laws protecting the public safety and providing for the prevention and detection of crime. The Department shall have its principal office and headquarters in the City of Austin, where all of its records shall be kept."

"Art. 4413 (2). The control of the Department is hereby vested in the Public Safety Commission, hereinafter designated as 'the Commission,' which Commission shall consist of three citizens of this State . . . ."

"Art. 4413 (4). The Commission shall formulate plans and policies for the enforcement of the criminal laws and of the traffic and safety laws of the State, the prevention of crime, the detection and apprehension of violators of the laws, and for the education of the citizens of the State in the promotion of public safety and law observance."

"Art. 4413 (13). There is hereby created, as an integral part of the Department, a Headquarters Division, consisting of the Bureaus of Identification and Records, Communications, Intelligence and Education. With the advice and consent of the Commission, the Director shall employ such chiefs, experts, operators, instructors and assistants as may be necessary for the operation of this Division and the several Bureaus therein."

"Art. 4413 (15). 1. It shall be the duty of the Director with the advice and consent of the

Commission to name the Chief of the Bureau
of Communications.

"2. This Bureau may, when funds are pro-
vided, install and operate a police radio
broadcasting system for the broadcasting
information concerning the activities of
violators of the law, and for the directing
of the activities and functions of the law
enforcement agencies of the State, the coun-
ties and the municipalities. It shall co-
operate with county and municipal police
authorities and with police radio stations,
in this State and in other States.

"4. This Bureau shall provide for the
rapid exchange of information, concerning the
commission of crimes and the detection of vio-
lators of the law, between the law enforce-
ment agencies of this State, its counties and
municipalities and other states and the national
government."

The statutes above quoted authorize the installation
and operation of a police radio broadcasting system for the pur-
pose of preventing crime, detecting and apprehending law vio-
lators, and for the directing of the activities and functions of
the law enforcement agencies of the State, the counties and the
municipalities. Thus, the Department of Public Safety could pur-
chase suitable land on which to install and operate said radio
station as a part of said authorized broadcasting system with
moneys appropriated for the installation and equipment of such
a system; first, if appropriations of the department are broad
enough to cover such a purchase; and second, if such a purchase
could be designated a necessary and incidental expense in carry-
ing out the power granted to the department to install such a
system.

We think such a purchase is authorized by the
General Appropriation Bill for the two-year period ending
August 31, 1943, known as Senate Bill No. 423, p. 1231, 47th
Leg., 1941, wherein it provides for an annual appropriation for
the Department of Public Safety, Main Division, designated as
item 106, as follows:

"106. Postage, supplies, arms, wire communication,

radio equipment, radio supplies, printing
and contingent expenses; hospitalization and
medical services when injured in line of
duty, funeral expenses when death results
from injuries received in line of duty; surety
bonds, books, all necessary expenses of oper-
ating a police training school at Camp Mabry
for training peace officers generally and
members of this department, and any other
necessary departmental expenses, including equip-
ment . . . . . . . . .$55,950.00".

We have underscored the words "any other necessary
departmental expenses." Under the emergency circumstances
quoted in your letter the purchase of suitable land appears to
be necessary and incidental to the establishment of an efficient
broadcasting system; suitable land in this respect might poss-
ibly be regarded as part of the necessary radio equipment, and
the expense for obtaining same may properly be regarded as one
of these necessary departmental expenses provided for in the
above quoted item 106.

In the case of Herring v. Houston National Ex-
change Bank, 269 S.W. 1031, wherein there was a purchase by the
Texas Prison Commission, without the approval of the Legislature,
of a mill and site, part of the consideration being land on
which the mill was situated, it was held and approved by the
Texas Supreme Court that there was no violation of V.A.C.S.
Supp. 1922, Art. 6184, forbidding the purchase of "land" for
the prison system of Texas, without the Legislature's approval,
the purchase of the land being only incidental to the purpose
of establishing a mill and factory for the said system as au-
thorized by law.

In the quoted Herring case, the Supreme Court of
Texas, in the face of an existing statute which forbade the
purchase of land by the Texas Prison Commission, unless app-
roval of the Legislature was first secured, looked upon the
forbidden purchase of land as incidental to the authority
granted to the Commission to establish a mill and factory and
upheld the act of the Commission. There exists no similar
statute which would limit the land purchasing power of the
Department of Public Safety. It appears, therefore, that the
proposed purchase of suitable land for the erection of an
authorized radio station by the Department of Public Safety
under said circumstances may with greater certainty be
determined as necessary and incidental to the power given it

it to install and operate such a station.

In the case of Terrill v. Sparks, 104 Tex. 191, 135 S.W. 519, the Supreme Court of Texas, in discussing an official's authority under an appropriation bill, quoted from Sutherland on Statutory Construction, as follows:

"Whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. It is a well-established principle that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. The grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted. Where the law commands anything to be done, it authorized the performance of whatever may be necessary for executing its commands."

Furthermore, it is a well known fact, that broadcasting stations cannot be located on any sort of land. Quoting from your letter: "For efficient transmission of messages by radio, it is necessary that the aerial and ground system be erected on certain types of soil. . . . " It is only reasonable to impute that the Legislature was sufficiently informed in these matters when it created the power in the Department of Public Safety to install and operate a radio station, and provided appropriations to install and operate same. In view of the fact that the Legislature did not attempt to specify where the station should be located and did not confine it to any particular ground, the Department of Public Safety was authorized necessarily to ascertain for itself suitable land for such purposes and to pay for same with appropriations granted it.

Under the emergency circumstances of the case and in the light of the statutes authorizing the establishment of a police radio broadcasting system, it is our opinion that the purchase of suitable land on which to erect a radio station for the Department of Public Safety is necessary and incidental to the purposes of preventing crime, detecting and apprehending law violators, and for proper enforcement

of the powers of your department, that the same is authorized, and the money appropriated in Item 106 of the Department of Public Safety appropriation (Senate Bill 423, p. 1231, 47th Leg., 1941) may be used for the purchase of said suitable land.

You will understand, of course, that we have not considered and that it is not within our province to consider the advisibility of this purchase from a financial standpoint, but have only considered and passed upon the legal right of the Department of Public Safety to purchase suitable land in view of the circumstances set out in your letter under the law as it now exists.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (s) Robert E. Kepke
Assistant

By (s)Chester E. Ollison

REK:nw


APPROVED SEP. 8, 1941
(s) Grover Sellers
First Assistant Attorney General

APPROVED
Opinion Committee
By B. W. B. Chairman